IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| GRANT FAMILY FARMS, | ) | |
| | ) | Civil No. 2:10-CV-00551-BSJ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LIQUA-DRY a/k/a LIQUADRY, | ) | **MEMORANDUM OPINION** |
| DEEANNA PETERSON and ELEND | ) | **& ORDER RE: ATTORNEY'S FEES** |
| LEBARON, | ) | **AND COSTS** |
| | ) | **(Fed. R. Civ. P. 54(d))** |
| Defendants; | ) | |
| _____ | ) | |
| LIQUA-DRY, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GRANT FAMILY FARMS, | ) | |
| | ) | |
| Counterclaim | ) | |
| Defendant. | ) | |

```
┌─────────────────────────────────┐
│            FILED                │
│  CLERK, U.S. DISTRICT COURT     │
│  September 27, 2012 (10:48am)   │
│       DISTRICT OF UTAH          │
└─────────────────────────────────┘
```

* * * * * * * * *

## FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of a contract for the sale of beets.  In 2009, plaintiff furnished four

shipments of beets to the defendants.[1]  The defendants only paid for two,[2] alleging that the beets

_____

[1](*See* Countercl. of Def. Liqua-Dry, Inc., filed Aug. 6, 2010 (CM/ECF No. 6) ("Def.'s Countercl."), ¶ 11.)

[2](*Id.* ¶ 16.)

were dirty and unusable.[3]  Of the four shipments, three are a result of a purchase order created

and signed by defendants, and sent to plaintiff on either August 11 or 12, 2009.[4]  The purchase

order specified that the beets would be due in late November, and that defendants would retrieve

the beets from Colorado no later than December 10, 2009.[5]  Bills of lading indicate that the beets

identified to invoices 29072 and 26851 were retrieved in Wellington, Colorado on December 2

and 8, 2009.[6]  In response, plaintiff prepared invoices labeled 29072 and 26851, and dated

December 2 and 8, 2009.[7]  Each of these invoices contained the following language immediately

below the price total: "In the event collection action becomes necessary, buyer agrees to pay all

costs of collection, including attorney fees."[8]

On August 26, 2011, defendants filed a motion for partial summary judgment on the issue

---

[3](*See* Answer of Def. Liqua-Dry, Inc., filed Aug. 6, 2010 (CM/ECF No. 6) ("Def.'s Answer"), ¶¶ 6, 12, 24.)

[4](*See* Decl. of Pl. in Supp. of Resp. to Defs.' Mot. for Summ. J. & in Supp. of Pl.'s Cross-Motion for Summ. J., filed Oct. 10, 2011 (CM/ECF No. 44-1) ("Decl. of Andy Grant") Ex. M.)

[5](*See id.*)

[6](*See id.* Exhs. O & Q.)

[7](*See id.* Exhs. N & P.)

[8](*See id.* Exhs. N & P.)  "Contractual fee-shifting provisions are generally valid under Colorado law. . . .  No 'formulaic language' is required to constitute a valid fee-shifting provision, so long as the provision "clearly informs the parties that a breach . . . may result in an award of attorney fees." . . .  The fee-shifting provision must 'specifically refer' to attorney fees to be valid. . . ."  *Morris v. Belfor USA Group, Inc.*, 201 P.3d 1253, 1260 (Colo. Ct. App. 2008) (quoting  *Butler v. Lembeck*, 182 P.3d 1185, 1188-89 (Colo. Ct. App. 2007)).  Here, the fee-shifting provision referred specifically to attorney's fees and put both parties on notice that should plaintiff be required to pursue a collection action against the defendants, they would reimburse plaintiff for its attorney's fees and costs of collection.

of attorney's fees.[9] On October 10, 2011, plaintiff responded by filing a cross-motion for partial

summary judgment.[10] At a hearing on January 27, 2012, the court indicated that in the event that

plaintiff prevailed at trial, plaintiff would be entitled to an award of attorney's fees.[11]

On February 15, 2012—exactly twenty months from the date that plaintiff filed the initial

complaint[12]—the court signed a consent judgment and order,[13] wherein the parties agreed that

defendants are indebted to plaintiff on a joint and several basis, in the principal amount of

$26,416.14, "plus interest at the agreed contract rate of 1.5% per month, from December 2, 2009

through the date the final judgment in this matter is fully satisfied."[14] Defendants also agreed to

the entry of final judgment with prejudice in favor of plaintiff on all alleged counterclaims, and

withdrew all their alleged affirmative defenses.[15]  The consent judgment also provided for an

award of plaintiff's attorney's fees, stating that

> Defendants and Plaintiff attempted to determine the proper amount of Plaintiff's
> attorney's fees and interest but were unable to agree on a figure. Thus, the
> Defendants agreed to entry a judgment for all of Plaintiff's claims against the

---

[9](*See* Defs.' Mot. for Partial Summ. J., filed Aug. 26, 2011 (CM/ECF No. 38).)

[10](*See* Pl.'s Cross-Motion for Partial Summ. J., filed Oct. 10, 2011 (CM/ECF No. 43).)

[11]However, the court also noted that it was not inclined to award the entire amount of attorney's fees that plaintiff's counsel requested.

[12](*See* Pl.'s Compl., filed June 15, 2010 (CM/ECF No. 1) ("Pl.'s Compl.").)

[13](*See* Stipulation for Entry of Jgmt. & Agreed Briefing Schedule on Pl.'s Fee Appl., filed Feb. 15, 2012 (CM/ECF No. 69) ("Stip. Ord. & Jgmt.").)  Though captioned and docketed as a "Stipulation for Entry of Judgment," this document was entered by this court as an order and interlocutory judgment, anticipating the entry of a final judgment after the question of attorney's fees and costs is resolved.  (*See id.* at 4 ¶ 8.)

[14](*Id.* at 2.)

[15](*Id.*)

Defendants and the parties further agreed to reserve for the Court's determination the proper amount of the Plaintiff's attorney's fees and costs.[16]

Plaintiff subsequently filed a motion for attorney's fees and costs[17] along with a memorandum in support of the motion.[18]  In that motion, plaintiff requested that the court award $79,341.50 in attorney's fees, and $13,203.37 in costs, for a total of $92,544.87.[19]  At the same time, plaintiff also requested an additional $6,975.00, anticipating fees and costs to prepare a reply brief ($2,555.00) and attend a hearing ($4,420.00).[20]  Defendants filed a memorandum in opposition to plaintiff's motion on March 12, 2012.[21]  Plaintiff filed a reply in support of its motion on March 19, 2012.[22]

On April 12, 2012, plaintiff's motion for attorneys' fees came on for hearing.[23]  Michael J. Keaton and John T. Anderson appeared on behalf of plaintiff, and Richard N. Barnes appeared

---

[16](*Id.*)

[17](*See* Pl.'s Mot. to Determine Reasonableness of Att'y Fees and Costs and to Add Same to the Partial J., filed Feb. 27, 2012 (CM/ECF No. 70) ("Pl.'s Mot.").)

[18](*See* Pl.'s Mem. of Law in Supp. of its Mot. to Determine Reasonableness of its Attn'y Fees and Costs, filed Feb. 27, 2012 (CM/ECF No. 71) ("Pl.'s Mem.").)

[19](*See id.* at 14, 18; *see also* Pl.'s Mot. at 3.) Confusingly, in each instance plaintiff totaled the sum of $79,341.50 and $13,203.37 to be $92,199.77, which is $345.10 less than the correct total of $92,544.87. The court will assume that the discrepancy is nothing more than a mathematical error.

[20](*See* Pl.'s Mot. at 3; *see also* Pl.'s Mem. at 18.)

[21](*See* Defs.' Mem. in Opp'n to Pl.'s Claim for Att'y Fees, filed Mar. 12, 2012 (CM/ECF No. 72) ("Defs.' Opp'n").)

[22](*See* Pl.'s Reply to Defs.' Mem. in Opp'n to Pl.'s Mot. to Determine Reasonableness of its Contractually Due Att'y Fees and Costs Pursuant to Order, filed Mar. 19, 2012 (CM/ECF No. 74) ("Pl.'s Reply").)

[23](Transcript of Hearing, dated Apr. 12, 2012 (CM/ECF No. 78) ("Tr. 4/12/12").)

-4-

on behalf of defendants.  The court heard the testimony of Mr. Keaton and the arguments of counsel and took the matter under advisement.[24]

After the hearing, plaintiff's counsel submitted a supplemental brief and supporting affidavit, requesting that the previously estimated $6,975.00 in attorneys fees and costs (for preparing the reply brief and attending the hearing) be increased to reflect actual fees and costs of $14,222.11—representing actual fees of $6,862.50 for March 2012, $4,380.00 for April 2012, and $2,979.61 in actual costs.[25]  When combined with plaintiff's previous application for $92,544.87, plaintiff is now requesting a total amount of $106,766.98 in fees and costs, stating that the same "are reasonable and necessary to successfully uphold the Plaintiff's contract rights and successfully defend against all of the Defendants' counterclaims in this matter."[26]

## ANALYSIS AND FINDINGS

### Attorney's Fees Awards

"An award of attorney's fees must be reasonable."[27]  This court must determine "in light of all the circumstances" whether in fact the fees and costs that plaintiff seeks are reasonable, "based upon the time and effort reasonably expended by the prevailing party's attorney" in pursuing the plaintiff's contractual claim and defending against  the Defendants' counterclaims

---

[24](*See id.* at 57:23–24; Minute Entry, dated April 12, 2012 (CM/ECF No. 75).)

[25](*See* Pl.'s Supplemental Statement of Actual Fees & Costs to Replace Earlier Estimates, filed Apr. 24, 2012 (CM/ECF No. 76) ("Pl.'s Supplemental Br.") at 3.)

[26](*Id.*)

[27]*Hartman v. Freedman*, 197 Colo. 275, 280, 591 P.2d 1318, 1322 (Colo. 1979) (citing *Brillhart v. Hudson*, 169 Colo. 329, 455 P.2d 878 (1969)).

pleaded in this action.[28]

The Utah Supreme Court has explained that when

the parties have agreed by contract to the payment of attorney fees, the court may award reasonable fees in accordance with the terms of the parties' agreement. The amount to be awarded is largely within the sound discretion of the trial court, but such factors should be considered as the relationship of the fee to the amount recovered, the novelty and difficulty of the issues involved, the overall result achieved and the necessity of initiating a lawsuit to vindicate rights under the contract.[29]

In *Dixie State Bank v. Bracken*,[30] the Utah Supreme Court provided four questions that a court should answer when determining a reasonable attorney's fee:

1. What legal work was actually performed?

2. How much of the work performed was reasonably necessary to adequately prosecute the matter?

3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?

4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

It is important to note that with this analysis, what an attorney bills or the number of hours spent on a case is not determinative. *See Cabrera v. Cottrell*, 694 P.2d at 624–25. The appropriateness of the work actually performed and of

---

[28]*Crow v. Penrose-St. Francis Healthcare System*, 262 P.3d 991, 998 (Colo. Ct. App. 2011) (citing *Tallitsch v. Child Support Services, Inc.*, 926 P.2d 143, 147 (Colo. Ct. App. 1996) (citing *Spensieri v. Farmers Alliance Mutual Insurance Co.*, 804 P.2d 268 (Colo. Ct. App. 1990))).

[29]*Trayner v. Cushing*, 688 P.2d 856, 858 (Utah 1984) (footnotes omitted) (citing *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.,* 645 P.2d 667 (Utah 1982)).

[30]764 P.2d 985 (Utah 1988).

the attorney's billing rate is evaluated before a reasonable fee is set.[31]

In *Hartman v. Freedman*,[32] the Colorado Supreme Court similarly observed that "[i]n awarding attorney's fees, the trial court may consider, among other factors, the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, and the usage in the legal community concerning fees in similar

_____

[31]*Id.* at 990 (footnotes omitted). The court in *Dixie State Bank*, 764 P.2d at 990 n.7, also referenced Utah Rule of Professional Conduct 1.5(a), which provides as follows:

> (a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (a)(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;
>
> (a)(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (a)(3) the fee customarily charged in the locality for similar legal services;
>
> (a)(4) the amount involved and the results obtained;
>
> (a)(5) the time limitations imposed by the client or by the circumstances;
>
> (a)(6) the nature and length of the professional relationship with the client;
>
> (a)(7) the experience, reputation and ability of the lawyer or lawyers performing the services; and
>
> (a)(8) whether the fee is fixed or contingent.

Colorado courts cite to essentially the same standards as to the reasonableness of fees. *See, e.g.*, *In re Green*, 11 P.3d 1078, 1088 n.9 (Colo. 2000) (relying on Colo. R. Prof. Cond. 1.5(a) in evaluating reasonableness of attorney's fees); *Mau v. E. P. H. Corp.*, 638 P.2d 777, 779 (Colo. 1981) (evaluating reasonableness of attorney's fees in light of factors set forth in DR 2-106(B), Colo. Code Prof. Resp.).

[32]197 Colo. 275, 591 P.2d 1318 (1979).

cases. . . .  However, no one of these factors is conclusive."[33]  More recently, the Colorado Court

of Appeals echoed the language of *Hartman*:

> In awarding attorney fees, a trial court may consider several factors, including (1) the amount in controversy; (2) the time required to effectively represent the client; (3) the complexity of the case; (4) the value of the legal services to the client; and (5) the customary practice in the legal community regarding fees in similar cases.[34]

Generally, "[a] party who requests an award of attorney fees has the burden of presenting

evidence sufficient to support an award."[35]  Except in "the most simple cases, the evidence

should include the hours spent on the case, the hourly rate or rates charged for those hours, and

usual and customary rates for such work. The evidence may be supplied by affidavit."[36]  As the

Colorado Supreme Court has explained,

> The party requesting an award of attorney fees bears the burden of proving by a preponderance of the evidence its entitlement to such an award.  *Kinsey v. Preeson*, 746 P.2d 542, 551-52 (Colo. 1987) (citing *Board of County Comm'rs v. Auslaender*, 745 P.2d 999, 1001-02 (Colo.1987)); . . . *Spensieri v. Farmers Alliance Mutual Ins. Co.*, 804 P.2d 268, 271 (Colo. App.1990) ("If the attorney provides a reason and rational basis for the work done, he or she should be compensated accordingly. . . .") . . .  Counsel is not required "to record in great detail how each minute of his time was expended.  But at least counsel should

---

[33]197 Colo. at 281, 591 P.2d at 1322 (citing *Bryant v. Hand*, 158 Colo. 56, 404 P.2d 521 (1965); *Warrenberg v. Cline*, 108 Colo. 179, 114 P.2d 302 (1941); *In re Estate of Painter*, 39 Colo. App. 506, 567 P.2d 820 (1977)).

[34]*Fang v. Showa Entetsu Co., Ltd.*, 91 P.3d 419, 424 (Colo. Ct. App. 2003) (citing *Porter v. Castle Rock Ford Lincoln Mercury, Inc.*, 895 P.2d 1146, 1150 (Colo. Ct. App. 1995) (citing *Hartman*)) (attorney's fees awarded under Colorado Wage Claim Act).

[35]*Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 268 (Utah 1992).

[36](*Id.*)

identify the general subject matter of his time expenditures."[37]

If a party fails to provide an adequate basis for the award of attorney fees, the court may not be able to assess important factors in determining the reasonableness of the fee, such as the reasonableness of the number of hours spent on the case or the fee customarily charged in the area for similar services.[38]  "If the attorney provides a reason and rational basis for the work done, he or she should be compensated accordingly, and, of course if he or she should fail to establish such a basis, limiting the award of attorney fees is appropriate."[39]  As defendants' counsel suggests, "it 'is not for the court to justify each dollar or hour deducted from the total submitted by counsel . . . .  [,but] counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.'"  *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725 (10th Cir. 1093) (alterations in original) (quoting *Mares v. Credit Bureau*, 801 F.2d 1197, 1210 (10th Cir. 1986)).

### Grant Family Farms' Fee Request

To show that its application for attorney's fees is reasonable, plaintiff has provided copies of invoices containing billing entries from April 2010 to April 2012,[40] together with affidavits

---

[37]*Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 383 (Colo.), *cert. denied*, 513 U.S. 1015 (1994) (quoting *Hensley v. Eckerhart*, 461 U.S. at 437 n. 12) (some citations omitted)) (approving attorney time records that "included the date, the attorney, the time expended, and a general statement of work done").

[38]*See Cottonwood Mall Co. v. Sine*, 830 P.2d at 269.

[39]*Spensieri v. Farmers Alliance Mut. Ins. Co.*, 804 P.2d 268, 271 (Colo. Ct. App. 1990) (citing *Heller v. First National Bank*, 657 P.2d 992, 1000 (Colo. Ct. App. 1982)).

[40](*See* Pl.'s Mot., at Exh. A. (CM/ECF No. 71-1); Pl.'s Supplemental Br. at Exh. A (CM/ECF No. 76-1).)

from Michael J. Keaton[41] and John Anderson.[42]

Mr. Keaton averred that he believed the time that his firm spent on this case "to have been reasonably incurred for the tasks performed and necessary based on the actions of the Defendants and the Plaintiff's obligations to respond thereto."[43] Mr. Keaton further averred that hourly rates for his firm's personnel "ranged from $225.00 per hour for associate time to $365.00 per hour for partner time.  Paralegal time in support of litigation is billed at $85.00 per hour."[44] Mr. Keaton states that these rates are "very competitive in the narrow field of PACA trust enforcement and _well_ below even the lower end of any range when it comes to federal litigation."[45]  Mr. Keaton asserts that "Defendants' counterclaims, numerous defenses and extensive motion practice was the direct cause of much of the litigation fees and costs."[46]

Mr. Anderson billed at a rate of $275.00 per hour, which was at the "low end" of what he typically charged.[47]  Mr. Anderson testified that based upon his first-hand knowledge of, and

---

[41](_See_ Aff. of Pl.'s Counsel in Supp. of Pl.'s Mot. to Sever & Set Amount of Fees & Costs (CM/ECF No. 71-1) ("Keaton Aff.") at 1–4; Supplemental Aff. of Pl.'s Counsel in Supp. of Pl.'s Mot. to Set Amount of Fees & Costs (CM/ECF No. 76-1) ("Keaton Supplemental Aff.") at 1–3.)

[42](_See_ Aff. of John T. Anderson Regarding Att'y Fees & Costs (CM/ECF No. 71-2) ("Anderson Aff.") at 1–5.)

[43](Keaton Aff. ¶ 6.)

[44](_Id._ ¶ 12.)  _See also Morris v. Belfor USA Group, Inc._, 201 P.3d at 1263 (observing that "paralegal charges are thus properly viewed as surrogate attorney fees" in making an award of "attorney's fees").

[45](_Id._ ¶ 13 (emphasis in original).)

[46](_Id._ ¶ 15.)

[47](Anderson Aff. ¶ 9.)

experience with, billing rates of other similarly experienced lawyers in Salt Lake City, Utah, it was Mr. Anderson's professional opinion that his firm's lawyer billing rates for this matter were and are consistent with the rates of other such lawyers.[48]  Based on that knowledge, "as well as the favorable result achieved," Mr. Anderson averred that the $9,316.25 of fees he billed were "necessarily and reasonably incurred to protect the litigation and financial interests" of his client in this case.[49]

After a period of briefing on the issue of attorney's fees, the court held an evidentiary hearing wherein Mr. Keaton was put under oath and provided testimony as to the reasonableness of his fees.[50]  Although Mr. Barnes had an opportunity to cross-examine Mr. Keaton at the hearing regarding the reasonableness of Mr. Keaton's billing entries, Mr. Barnes instead chose to focus on various other topics.[51]  Mr. Barnes also declined the opportunity to cross-examine Mr. Anderson regarding the reasonableness of Mr. Anderson's fee application.[52]  However, the court explicitly noted at that time that although Mr. Barnes declined the opportunity to cross-examine

---

[48](*Id.* ¶ 10.)

[49](*Id.* ¶ 11.)

[50](*See generally* Tr. 4/12/12, at 4:23-32:11 (testimony of Mr. Keaton).)   Once the requesting party has supplied evidence supporting the reasonableness of the award, the court may hold an evidentiary hearing, wherein the party opposing the requested fee award will have an opportunity to cross-examine the attorney who is requesting the fee.  *See Cottonwood Mall Co. v. Sine*, 830 P.2d at 268-69; *cf. Roberts v. Adams*, 47 P.3d 690, 699-700 (Colo. Ct. App. 2001) (explaining that a party is entitled to a hearing to determine a reasonable amount of attorney fees "at least when . . . it presents the affidavit of an expert on attorney fees raising disputed issues of fact and a significant amount of fees has been requested").

[51](*See id.* at 26:17–32:11.)

[52](*See id.* at 32:13–21.)

-11-

Mr. Anderson, Mr. Barnes was not conceding the reasonableness of Mr. Anderson's fees.[53]

Despite his failure to cross-examine opposing counsel specifically regarding the reasonableness

of Mr. Keaton or Mr. Anderson's fees, Mr. Barnes did present legal argument opposing the

same.[54]

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court observed

that

> [t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.  The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.[55]

As such, the court must determine (1) whether plaintiff's counsel's billing rates were reasonable,

---

[53](*See id.* at 32:24–33:1.)

[54](*See generally id.* at 37:23–51:3.)

[55]461 U.S. at 433.  *Hensley* involved an award of fees under  42 U.S.C. § 1988, which provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."
The Colorado courts look to the *Hensley* approach as well:

> The United States Supreme Court has stated that while "'there is no precise rule or formula' for determining attorney's fees," *Evans v. Jeff D.*, 475 U.S. 717, 735-36, 106 S.Ct. 1531, 1542, 89 L.Ed.2d 747 (1986) (quoting *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941), the proper starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 (considering fee to be awarded under 42 U.S.C. § 1988); accord *Ramos*, 713 F.2d at 552 (same); *Spensieri*, 804 P.2d at 270 (estimate of a reasonable attorney fee involves a calculation of the "lodestar" amount, which represents the number of hours reasonably expended multiplied by a reasonable hourly rate); *see Mau v. E.P.H. Corp.*, 638 P.2d 777 (Colo. 1981).

*American Water Development, Inc. v. City of Alamosa*, 874 P.2d at 386.

and (2) whether the hours they claim on their invoices were "reasonably expended on the litigation."[56]

The court initially finds both Mr. Keaton's and Mr. Anderson's billing rates (as represented in their affidavits) to be reasonable, and that the same is true of the other employees of their respective firms who accrued billable time. The court bases this finding primarily on the affidavits submitted by Mr. Anderson and Mr. Keaton,[57] as well as the testimony and argument presented at the April 12, 2012 hearing.[58]

The court must now turn its attention to whether the hours for which plaintiff seeks an award of attorney's fees were reasonably expended on this litigation.

### The Keaton & Associates Monthly Invoices

The court has examined Mr. Keaton's invoices and Mr. Anderson's fee itemization in some detail. The court has noted its specific concerns—and any appropriate reductions from the original amounts requested—in the analysis that follows.

A matter of general concern is that the Keaton & Associates' invoices do not identify the lawyer or other timekeeper performing the task,[59] making it nearly impossible to determine *who*

---

[56]*Id.*

[57]*See supra* notes 41 & 42.

[58](*See* Tr. 4/12/12, *passim.*)

[59]As such, the court assumes that the tasks indicating lower billing rates were performed by an associate, while the tasks indicating higher billing rates were performed by Mr. Keaton. *Cf. Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d at 383 (noting that the requesting party's time records "included the date, the attorney, the time expended, and a general statement of work done").

is doing *what*, and giving the court cause to question whether some efforts were duplicated.[60]

The court also found that different tasks presumably performed either by an associate or Mr.

Keaton were billed at different rates, with no apparent explanation for the difference.  For

example, the court noticed presumably associate rates of $210.00 per hour,[61] $225.00 per hour,[62]

$235.00 per hour,[63] and $250.00 per hour.[64]

Keeping in mind that the "[c]alculation of reasonable attorney fees is in the sound

discretion of the trial court,"[65] and that "[a] party who requests an award of attorney fees has the

burden of presenting evidence sufficient to support an award,"[66] the court has reduced the fees

awarded to Keaton & Associates ("Keaton") where the billable tasks for which fees are sought

---

[60]*See Hensley v. Eckerhart*, 461 U.S. at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ."); *see also Cent. New York Laborers' Health & Welfare, Pensions, Annuity & Training Funds v. Five Star Const. Servs., Inc.*, 5:09-CV-0509 GTS/GJD, 2011 WL 167236 (N.D.N.Y. Jan. 19, 2011) (noting that compensating counsel twice for the same work would inappropriately allow for a "double recovery").

[61](*See, e.g.*, Oct. 27, 2011 Invoice (CM/ECF No. 71-1) at 44.)

[62](*See, e.g.*, May 13, 2010 Invoice (CM/ECF No. 71-1) at 9.)

[63](*See, e.g.*, June 24, 2010 Invoice (CM/ECF No. 71-1) at 11.)

[64](*See, e.g.*, Feb. 21, 2011 Invoice (CM/ECF No. 71-1) at 31.)

[65]*Dixie State Bank v. Bracken*, 764 P.2d at 988; *Anderson v. Pursell*, 244 P.3d 1188, 1193-94 (Colo. 2010) (court's decision to award costs and attorney's fees reviewed under an abuse of discretion standard); *Weston v. T & T, LLC*, 271 P.3d 552, 561 (Colo. Ct. App. 2011) ("The determination of whether attorney fees are reasonable is a question of fact for the trial court and is reviewed under an abuse of discretion standard.").

[66]*Cottonwood Mall Co. v. Sine*, 830 P.2d at 268; *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d at 383.

were inadequately described,[67] apparently duplicative, excessive or otherwise erroneous, or where the time involved was not shown by counsel to be reasonably expended on the litigation in this case.

### May 13, 2010 Invoice (work performed in April 2010)

On May 13, 2010, Mr. Keaton submitted a bill to his client for $785.98, $775.00 of which were charges for attorney's fees.[68]  The court finds that $65.00 of these fees are not only unreasonable, but unwarranted: on a billing entry dated April 12, 2010, one attorney billed 1.10 hours at a rate of $325.00 per hour,[69] but the three tasks purportedly totaling 1.10 hours in fact equal only 0.8 hours.[70]  This arithmetic discrepancy of 0.3 hours requires a fee reduction of $65.00 based upon this invoice.

### June 24, 2010 Invoice (work performed in May 2010)

On June 24, 2010, Mr. Keaton submitted a bill to his client for $1,576.17, $1,552.50 of which were charges for attorney's fees.[71]  The court awards $1,576.17 based upon the June 24, 2010 invoice and does not find it necessary to make any reductions of the original amount claimed.

---

[67]*Cf. Mr. X v. N.Y. Educ. Dept.*, 20 F. Supp. 2d 561, 564 (S.D.N.Y. 1998) (noting that time entries must not be so vague as to prevent the court from determining whether or not the amount of time spent on particular tasks was reasonable, and that "[v]ague or incomplete time entries justify a reduction in the amount of attorney's fees awarded.").

[68](*See* May 13, 2010 Invoice (CM/ECF No. 71-1) at 10.)

[69](*See id.* at 9.)

[70](*See id.*)

[71](*See* June 24, 2010 Invoice (CM/ECF No. 71-1) at 12.)

*July 21, 2010 Invoice (work performed in June 2010)*

On July 21, 2010, Mr. Keaton submitted a bill to his client for $3,092.41, $3,049.50 of which were charges for attorney's fees.[72]

A billing entry dated June 10, 2010[73] for 4.60 hours is essentially the same as a May 25, 2010 entry for 3.60 hours on the June 24, 2010 invoice. Indeed, both entries contain sub-entries for preparation of the complaint and exhibits thereto, and preparation of the Rule 7.1 Disclosure Statement. Further, the June 10, 2010 entry also refers to "legal research in preparation of final case caption with proper party identification."[74] As it is an apparent duplicate entry, the court will disallow all sub-entries from the June 10, 2010 entry except for the preparation of "correspondence to Local Counsel forwarding Complaint for filing and service."[75] This represents a reduction of 4.40 hours at a rate of $235.00 per hour, or $1,034.00.

Also, on June 1, 7, 11, 18, 21, and 25, Keaton billed for multiple conferences with co-counsel and client.[76] Each of these conferences were for the purpose of discussing "timing of next steps," "options going forward," or "strategy going forward." The court finds these entries to be vague: counsel does not set forth why these seemingly repetitive discussions were necessary. Given the recurring nature of these entries over a relatively short period, these entries appear

---

[72](*See* June 24, 2010 Invoice (CM/ECF No. 71-1) at 15.)

[73](*See id.* at 13.)

[74](*Id.*)  It proves puzzling why an attorney would need to perform *legal* research to prepare a case caption—factual research, perhaps, but probably not legal research.

[75](*Id.*)

[76](*See id.* at 13–14.)

duplicative. These discussions with co-counsel totaled 1.7 hours, while the same discussions with the client totaled 0.8 hours.  The court is inclined to allow only 0.6 hours total for these discussions—0.3 at a rate of $325.00 per hour for discussions with client (June 7, 2010 entry), and 0.3 at $325.00 per hour for discussions with co-counsel (June 1, 2010 entry).

On June 18, 2010, an attorney billed 0.40 hours for "prepar[ing] copies of documents and fax[ing] same to Client."[77]  Copying and faxing documents typically are clerical tasks that do not merit compensation at a rate of $235.00 per hour.[78]

In light of the foregoing, the court will award $1,364.91 based upon the July 21, 2010 invoice, reducing the original claimed amount of $3,092.41 by $1,727.50.

### August 23, 2010 Invoice (work performed in July 2010)

On August 23, 2010, Mr. Keaton submitted a bill to his client for $2,557.38, $1,793.50 of which were charges for Keaton attorney's fees, and $750.38 for Mr. Anderson's attorney's fees.[79] The court disallows fees charged for a July 19, 2010 billing entry (0.30 hours at a rate of $235.00 per hour) presumably by an associate for conferring "with co-counsel" regarding client concerns over not filing a PACA action.[80]  A Keaton attorney already billed for presumably the same

---

[77](*Id.* at 13.)

[78]*See In re Green*, 11 P.3d 1078, 1088 n.9 (Colo. 2000) (Colo. R. Prof. Cond. 1.5(a)(1) "indicates that one factor in determining the reasonableness of a fee is 'the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.'  Under this principle, charging an attorney's hourly rate for clerical services that are generally performed by a non-lawyer, and thus for which an attorney's professional skill and knowledge add no value to the service, is unreasonable as a matter of law.")

[79](*See* Aug. 23, 2010 Invoice (CM/ECF No. 71-1) at 18.)

[80](*Id.* at 17.)

conversation with co-counsel on that same date,[81] and it appears duplicative for both attorneys who are participating in a conversation to be billing the client for that time.

Similarly, the court disallows fees based upon a July 26, 2010 billing entry (0.30 hours at $235/hour) wherein it appears an associate "reviewed Debtor's settlement letter"[82] because Mr. Keaton had already billed 0.40 hours for that same task on that same day.[83] In that same vein, the court disallows fees based upon the July 27, 2010 billing entry for "conference with co-counsel to discuss Debtor's settlement offer and proposed response" (0.20 hours at $235/hour) because Mr. Keaton already billed for this on that same day.[84]

The court also disallows $70.50 (0.30 hours at $235/hour) for a July 1, 2010 "Conference with Client to discuss [redacted],"[85] as the entry proves unilluminating as to the relationship of the conference to this case.

Finally, the court will most certainly disallow Keaton's submission of bills for *Mr. Anderson's* attorney's fees because Mr. Anderson has separately submitted his own fee itemization directly to the court in support of plaintiff's fee request.[86] Besides the fact that Keaton's claiming of Mr. Anderson's fees in this case may result in double billing, Mr. Keaton inexplicably claims that fees in the amount of $750.38 are due for Mr. Anderson's work from the

---

[81](*Id.* at 16.)

[82](*Id.* at 17.)

[83](*Id.*)

[84](*Id.* at 17–18.)

[85](*Id.* at 17.)

[86](*See* Exh. A to Anderson Aff. (CM/ECF No. 71-2) at 7–9.)

months of June to August 2010,[87] while Mr. Anderson's fee itemization for that same time period

reflects fees in the amount of only $275.00.[88]  Mr. Keaton avers that he "marked up" local

counsel charges by fifteen percent "to offset the salaries and costs of accounting time for

ensuring client payments get applied properly between the two firms,"[89] yet increasing Mr.

Anderson's bill from $275.00 to $750.38 represents a "mark-up" of nearly *275%.*  Mr. Keaton

fails to explain how that large a mark-up comports with the "fee customarily charged in the

locality for similar legal services."[90]

In light of the foregoing, the court will award $1,548.50 based upon the August 23, 2010

invoice, reducing the original claimed amount of $2,557.38 by $1,008.88.

### *September 22, 2010 Invoice (work performed in August 2010)*

On September 22, 2010, Mr. Keaton submitted a bill to his client for $2,602.70,

$2,579.00 of which were charges for attorney's fees.[91]

The court disallows the following charges contained in the September 2010 invoice: (1)

an entry dated August 16, 2010 charging a fee of $70.50 for "receiv[ing] and review[ing] Court

Order reassigning Judges";[92] (2) an entry dated August 26, 2010 charging a fee of $282.00 (1.2

hours multiplied by $235.00) for "Prepar[ing] initial draft of Plaintiff's Answer to

---

[87](*See* Aug. 23, 2010 Invoice (CM/ECF No. 71-1) at 18.)

[88](*See* Mr. Anderson's Invoice (CM/ECF No. 71-2) at 7 (totaling billing entries from June 14, 2010, July 28, 2010, Aug. 6, 2010, and Aug. 11, 2010).)

[89](Keaton Aff. ¶ 9.)

[90]Colo. R. Prof. Cond. 1.5(a)(3).

[91](*See* Sept. 22, 2010 Invoice (CM/ECF No. 71-1) at 21.)

[92](*Id.* at 19.)

counterclaim";[93] and an entry dated August 25, 2010 charging a fee of $97.50 (0.30 hours at $325.00 per hour) for "Conference with co-counsel to discuss document review and need to fully review documents before bothering Client further."[94]  The first two entries are identical to entries already billed on August 11, 2010, and August 25, 2010, and as such, appear duplicative.  The third entry seems akin to billing the client for associate training when the training has no direct bearing on the substantive outcome of the client's case.[95]

In light of the foregoing, the court will award $2,152.70 based upon the September 22, 2010 invoice, reducing the original claimed amount of $2,602.70 by $450.00.

### *October 12, 2010 Invoice (work performed in September 2010)*

On October 12, 2010, Mr. Keaton submitted a bill to his client for $2,319.80, $2,295.50 of which were charges for attorney's fees.[96]  The court disallows a September 2, 2010 fee of $423.00 (1.8 hours multiplied by $235.00) for "Continued preparation of Plaintiff's Answer to the Counterclaim."[97]  One day earlier, an attorney billed 2.80 hours for this same description. The entries do not distinguish themselves from each other, and as such, appear duplicative.

In light of the foregoing, the court awards $1,896.80 based upon the October 12, 2010 invoice, reducing the original claimed amount of $2,319.80 by $423.00.

---

[93](*Id.* at 20.)

[94](*Id.*)

[95]Generally, an attorney should not bill a client for a discussion with co-counsel about "not bothering the client."

[96](*See* Oct. 12, 2010 Invoice (CM/ECF No. 71-1) at 23.)

[97](*Id.* at 22.)

***November 23, 2010 Invoice (work performed in October 2010)***

On November 23, 2010, Mr. Keaton submitted a bill to his client for $2,670.14, $1,704.00 of which were charges for Keaton attorney's fees, and $607.78 of which represented Mr. Anderson's attorney's fees.[98]

For the reasons discussed above, the court will not award Keaton fees claimed on behalf of Mr. Anderson.

In addition, the court disallows $799.00, which was billed on October 4, 2010, for reviewing "cases with impact on Debtor's Motion to Dismiss" and preparation of "Memorandum of Law addressing personal liability of the Principals under PACA in preparation for upcoming hearing on Debtor's Motion to Dismiss."[99]  The court also disallows $162.50 (0.30 hours multiplied by $325.00) billed on October 4, 2010 for revising and amending the pre-hearing brief.[100]  These fees appear duplicative to the extent that these tasks were performed in preparation for the hearing on October 5, 2010.  Indeed, Mr. Keaton's firm "performed legal research" and "prepared Plaintiff's Response in Opposition to Debtor's Motion to Dismiss" on September 2, 2010.[101]  The court has reviewed the docket and has not identified any separate filings by plaintiff's counsel which reflect that plaintiff prepared a separate memorandum of law addressing personal liability of principals under PACA.

In light of the foregoing, the court awards $1,100.86 based upon the November 23, 2010

---

[98](*See* Nov. 23, 2010 Invoice (CM/ECF No. 71-1) at 25–26.)

[99](*Id.* at 24.)

[100](*Id.* at 25.)

[101](*See* Oct. 12, 2010 Invoice at 22.)

invoice, reducing the original claimed amount of $2,670.14 by $1,569.28.

### December 13, 2010 Invoice (work performed in November 2010)

On December 13, 2010, Mr. Keaton submitted a bill to his client for $3,605.35, $1,650.00 of which were charges for attorney's fees of the Keaton law firm, and $1,952.34 of which represented charges for October attorney's fees for Mr. Anderson.[102]

For the reasons discussed above, the court will not award Keaton fees claimed on behalf of Mr. Anderson.

In addition, the court disallows $32.50 (0.10 multiplied by $325.00) billed on November 23, 2010, for a conference with co-counsel "to discuss strategy going forward,"[103] and $47.00 (0.20 hours multiplied by $235.00) billed on November 22, 2010 for a conference with co-counsel to "discuss case status and next steps."[104]  The November 23, 2010 fee appears to be duplicative of a very similar strategy conference that occurred the prior day. The November 22, 2010 entry was presumably made by an associate; it appears Mr. Keaton billed for essentially the same entry on that same day.

In light of the foregoing, the court awards $1,573.51 based upon the December 13, 2010 invoice, reducing the original claimed amount of $3,605.35 by $2,031.84.

### January 21, 2011 Invoice (work performed in December 2010)

On January 21, 2011, Mr. Keaton submitted a bill to his client for $972.54, $840.50 of which were charges for attorney's fees of Mr. Keaton's law firm, and $122.10 of which

---

[102](*See* Dec. 13, 2010 Invoice (CM/ECF No. 71-1) at 28.)

[103](*Id.* at 27.)

[104](*Id.* at 28.)

represented charges for November attorney's fees for Mr. Anderson.[105]

For the reasons discussed above, the court will not award Keaton fees claimed on behalf of Mr. Anderson.  Thus, the court awards $850.44 based upon the January 21, 2011 invoice, reducing the original claimed amount of $972.54 by $122.10.

### February 21, 2011 Invoice (work performed in January 2011)

On February 21, 2011, Mr. Keaton submitted a bill to his client for $1,770.50, $448.00 of which were charges for attorney's fees of Mr. Keaton's law firm, and $1,317.03 of which represented charges for December attorney's fees for Mr. Anderson.[106]  For the reasons discussed above, the court will not award Keaton fees claimed on behalf of Mr. Anderson.  Thus, the court will award $453.47 based upon the February 21, 2011 invoice, reducing the original claimed amount of $1,770.50 by $1,317.03.

### March 11, 2011 Invoice (work performed in February 2011)

Mr. Keaton has submitted an invoice dated March 11, 2011 reflecting *no* charges to his client.[107]  As such, Keaton will be awarded no fees or costs for work performed in February 2011.

### April 20, 2011 Invoice (work performed in March 2011)

On April 20, 2011, Mr. Keaton submitted a bill to his client for $126.81, $125.00 of which were charges for attorney's fees of Mr. Keaton's law firm.[108]  The court finds no problems

---

[105](*See* Jan. 21, 2011 Invoice (CM/ECF No. 71-1) at 30.)

[106](*See* Feb. 21, 2011 Invoice (CM/ECF No. 71-1) at 31.)

[107](*See* Mar. 11, 2011 Invoice (CM/ECF No. 71-1) at 33.)  Any amounts appearing on the original invoice were redacted from the copy filed with the court.

[108](*See* Apr. 20, 2011 Invoice (CM/ECF No. 71-1) at 34.)

with the fees charged in this invoice, and as such, will award the claimed amount of $126.81.

### May 24, 2011 Invoice (work performed in April 2011)

On May 24, 2011, Mr. Keaton submitted a bill to his client for $1,006.32, $838.00 of which were charges for attorney's fees of Mr. Keaton's law firm, and $161.56 of which represented charges for March attorney's fees for Mr. Anderson.[109]  For the reasons discussed above, the court will not award Keaton fees claimed on behalf of Mr. Anderson.  In addition, the court disallows $292.00 (0.80 hours multiplied by 365.00/hour) billed on April 19, 2011 for a "Conference with Local Counsel to discuss past dues from Client and another threat to withdraw as our local counsel" and a "conference with Client to discuss same."[110]  Mediating unpaid fee issues between the client and local counsel does not appear to be "reasonable and necessary to successfully uphold the Plaintiff's contract rights and successfully defend against all of the Defendants' counterclaims in this matter,"[111] and thus the defendants should not be required to reimburse the plaintiff for this charge.

In light of the foregoing, the court will award $552.76 based upon the February 21, 2011 invoice, reducing the original claimed amount of $1,006.32 by $453.56.

### June 14, 2011 Invoice (work performed in May 2011)

On June 14, 2011, Mr. Keaton submitted a bill to his client for $878.55, $673.00 of which

---

[109](*See* May 24, 2011 Invoice (CM/ECF No. 71-1) at 36.)

[110](*Id.* at 36.)

[111](Pl.'s Supplemental Br. at 3.)  Indeed, Mr. Keaton marked "NO CHARGE" on a similar billing entry dated January 5, 2011 for "Multiple correspondence with Co-Counsel and staff to discuss recent correspondence from Local Counsel forwarding past due bills and inquiring about payments."  (Feb. 21. 2011 Invoice (CM/ECF No. 71-1) at 31.)

were charges for attorney's fees of Mr. Keaton's law firm, and $187.98 of which represented attorney's fees for Mr. Anderson.[112]

For the reasons discussed above, the court will not award Keaton fees claimed on behalf of Mr. Anderson.  In addition, the court disallows $50.00  billed on May 5, 2011 for having "Received correspondence from Local Counsel discussing case status."[113]  Merely "receiving" correspondence without more is clerical work and will not be compensated as reasonable attorney's fees.[114]

In light of the foregoing, the court will award $640.57 based upon the June 14, 2011 invoice, reducing the original claimed amount of $878.55 by $237.98.

### July 15, 2011 Invoice (work performed in June 2011)

On July 15, 2011, Mr. Keaton submitted a bill to his client for $3,415.81, $3,243.50 of which were charges for attorney's fees of Mr. Keaton's law firm and $172.31 reflected cost disbursements—mostly for "Online research."[115]

The court disallows two charges totaling $159.50 for "Review correspondence from Client [redacted]" and "Conference with Client to discuss [redacted]"[116] because these entries *as redacted* do not tie into the vindication of plaintiff's contract rights.  The balance of the invoice

---

[112](*See* June 14, 2011 Invoice (CM/ECF No. 71-1) at 38.)

[113](*See id.* at 37.)

[114]Reading the correspondence thus received was likely encompassed in a May 22, 2011 entry billing $50.00 (0.2 hours) for having "reviewed client file and docket in preparation of a detailed updated letter to client."  (*Id.*)

[115](*See* July 15, 2011 Invoice (CM/ECF No. 71-1) at 40.)

[116](*See id.*)

entries reflect counsel's review and discussion of defendants' discovery responses.[117]

In light of the foregoing, the court awards $3,256.31 based upon the July 15, 2011 invoice, reducing the original claimed amount of $3,415.81 by $159.50.

### August 16, 2011 Invoice (work performed in July 2011)

On August 16, 2011, Mr. Keaton submitted a bill to his client for $73.39, $73.00 of which were charges for attorney's fees of Mr. Keaton's law firm for a July 14,2011 "Conference with Client to discuss forwarding of case, status and timing of next steps" for 0.2 hours.[118]

The court awards $73.39 based upon this invoice.

### September 23, 2011 Invoice (work performed in August 2011)

On September 23, 2011, Mr. Keaton submitted a bill to his client for $1,424.56, $643.00 of which were charges for attorney's fees of Mr. Keaton's law firm, and $754.01 of which represented charges for August attorney's fees for Mr. Anderson.[119]

For the reasons discussed above, the court will not award Keaton fees claimed on behalf of Mr. Anderson. In addition, the court disallows $255.50 (0.70 hours multiplied by $365.00), billed on August 29, 2011.[120]  The task descriptions for the 1.30 hours entered  for that date only total 0.60 hours, leaving 0.7 hours unexplained.  Perhaps this discrepancy merely reflects an arithmetical error, but in any event, the court cannot award fees for billable time not attributed to

---

[117](*See id.* at 39-40 (9.1 hours at $250/hour ($2275.00) and 1.6 hours at $365/hour ($584.00).)

[118](*See* Aug. 16, 2011 Invoice (CM/ECF No. 71-1) at 41.)

[119](*See* Sept. 23, 2011 Invoice (CM/ECF No. 71-1) at 43.)

[120](*See id.* at 42.)

"reasonable and necessary" legal work.

In light of the foregoing, the court awards $415.05 based upon the September 23, 2011 invoice, reducing the original claimed amount of $1,424.56 by $1,009.51.

### October 27, 2011 Invoice (work performed in September 2011)

On October 27, 2011, Mr. Keaton submitted a bill to his client for $4,661.65, $4,254.50 of which were charges for attorney's fees of Mr. Keaton's law firm, and $300.44 of which represented charges for September attorney's fees for Mr. Anderson.[121]

This appears to have been a busy month as plaintiff's counsel was working on a response to defendant's motion for summary judgment on the issue of attorney's fees.  For the reasons discussed previously, the court will not award Keaton fees claimed on behalf of Mr. Anderson. Nor will the court award fees attributed to a "Conference with Client to discuss [redacted] (.4)," without more.[122]

In light of the foregoing, the court awards $4,215.21 based upon the October 27, 2011 invoice, reflecting a reduction of $446.44.

### November 16, 2011 Invoice (work performed in October 2011)

On November 16, 2011, Mr. Keaton submitted a bill to his client for $8,535.73, $7,334.00 of which were charges for attorney's fees of Mr. Keaton's law firm, and $1,126.91 of which represented charges for October attorney's fees for Mr. Anderson.[123]

For the reasons discussed above, the court will not award Keaton fees claimed on behalf

---

[121](*See* Oct. 27, 2011 Invoice (CM/ECF No. 71-1) at 46.)

[122](*Id.* at 45.)

[123](*See* Nov. 16, 2011 Invoice (CM/ECF No. 71-1) at 49.)

of Mr. Anderson.  In addition, the court disallows $109.50 billed for an October 12, 2011

(Conference with Local Counsel to discuss appearances and access to ECF noticing to reduce

expenses,"[124] as duplicative of a September 9, 2011 "Conference with Local Counsel to discuss

admission papers and need for EFC [sic] access to file our own pleadings to conserve costs,"[125]

and as an administrative matter not directly related to pursuit of plaintiff's claim.[126]  Further, the

court awards a reduced fee for time spent preparing pro hac vice appearance forms, for which

counsel billed a total of 2.9 hours on October 10 and 11, 2011.[127]  The pro hac vice appearance

form itself is only one page in length,[128] including the case caption, and the court will allow a fee

recovery for that task not exceeding 0.5 hours (at $365 per hour), or $182.50.

The court also disallows $547.50 in fees billed on October 4 and 5, 2011 for preparation

of "Affidavit for Client to Support Response to Debtor Summary Judgment Motion" during this

invoice cycle. This affidavit (or declaration) was filed on October 10, 2011[129] and drew an

objection from opposing counsel in the form of a motion to strike.[130]  Although the motion to

strike eventually became moot as a result of the parties' consent judgment, counsel filed a

---

[124](*See* Nov. 16, 2011 Invoice at 48.)

[125](*See* Oct. 27, 2011 Invoice at 45.)

[126]The same may said of $73.00 (0.2 hours at $365/hour) billed for an October 17, 2011 "Conference with Court to get ECF password and signed information into system."  (Nov. 16, 2011 Invoice at 48.)

[127](*See* Nov. 16, 2011 Invoice at 48-49.)

[128](*See* Motion for Pro Hac Vice & Consent of Local Counsel (CM/ECF No. 46).)

[129](*See* Decl. of Andy Grant, filed Oct. 10, 2011 (CM/ECF No. 44-1).)

[130](*See* Defendants' Motion to Strike Inadmissible Portions of Declaration of Andy Grant, filed Nov. 7, 2011 (CM/ECF No. 51).)

"Supplemental Declaration of Andrew L. Grant" on December 5, 2011 (CM/ECF No. 56)

presumably to cure the inadequacies of his original declaration, as well as to supply the court

with additional facts.[131]

Finally, the court awards a reduced fee of $109.50 based upon counsel's October 6, 2011

entry of 0.60 hours for "Compil[ing] exhibits for Summary Judgment Response"[132] because one

of the two exhibits thus compiled (a deposition excerpt) was eventually stipulated by Mr. Keaton

to be an inadmissible document.[133]  Its compilation thus was not "reasonable and necessary to

successfully uphold the Plaintiff's contract rights" and cannot sustain an award of fees.

In light of the foregoing, the court awards $6,170.32 based upon the November 16, 2011

invoice, reducing the original total of $8,535.73 by $2,365.41.

### *December 14, 2011 Invoice (work performed in November 2011)*

On December 14, 2011, Mr. Keaton submitted a bill to his client for $5,866.30, $5,584.50

of which were charges for attorney's fees of Mr. Keaton's law firm, and $235.51 of which

represented charges for November attorney's fees for Mr. Anderson.[134]

For the reasons discussed above, the court will not award Keaton fees claimed on behalf

of Mr. Anderson. The court disallows $219.00 (0.6 hours at $365/hour) billed on November 21,

---

[131]The court is allowing the fees associated with preparation of the December 5, 2012 declaration.

[132](Nov. 16, 2011 Invoice (CM/ECF No. 71-1) at 47.)

[133](*See* Response to Motion to Strike Excerpts from Deposition Transcripts, filed Dec. 5, 2011 (CM/ECF No. 59) at 1 ("After further review of the matter, Plaintiff tends to agree with the Defendants on the issue of striking these offered deposition excerpts.").)

[134](*See* Dec. 14, 2011 Invoice (CM/ECF No. 71-1) at 52.)

2011 for conferences with local counsel concerning extension of plaintiff's reply brief deadline "due to pressing other matters,"[135] which has more to do with the convenience of counsel than the direct advancement of the plaintiff's cause.

In light of the foregoing, the court awards $5,411.79 based upon the December 14, 2011 invoice, reducing the original claimed amount of $5,866.30 by $454.51.

### January 25, 2012 Invoice (work performed in December 2011)

On January 25, 2012, Mr. Keaton submitted a bill to his client for $11,874.08, $10,001.01 of which were charges for attorney's fees of Mr. Keaton's law firm, and another $1,818.90 of which were charges for "travel expenses" related to the January 12, 2012 hearing on the cross-motions for summary judgment.[136]

The court's primary concern with this invoice are various entries totaling 1.5 hours on December 2, 6, and 7, 2011 described as conferences following up with the USDA regarding its "licensing investigation" of the defendant.[137]  Fees are recoverable by plaintiff in this matter if counsel demonstrates they reflect time "reasonably expended on the litigation."  The court and the parties have consistently treated this case as a collections matter involving a contract-based claim; absent a demonstrable nexus with that claim, any administrative licensing investigation of defendant by the USDA appears wholly irrelevant.

In light of the foregoing, the court awards $11,326.58 based upon the January 25, 2012 invoice, reducing the original claimed amount of $11,874.08 by $547.50.

---

[135](*Id.* at 51.)

[136](*See* Jan. 25, 2012 Invoice (CM/ECF No. 71-1) at 56.)

[137](*Id.* at 54-55.)

*February 15, 2012 Invoice (work performed in January 2012)*

On February 15, 2012, Mr. Keaton submitted a bill to his client for $21,662.97, $18,168.00 of which were charges for attorney's fees of Mr. Keaton's law firm, and $1,127.45 of which represented charges for January attorney's fees for Mr. Anderson.[138]

For reasons discussed above, the court will not award Keaton attorney's fees claimed on Mr. Anderson's behalf.

The court has reduced counsel's hearing attendance fees billed for the hearings on January 12 and 27, 2012 by $2,190.00 (6.0 hours at $365/hour) because the pertinent time entries (totaling 10.5 hours) exceed the actual duration of the hearings by nearly 7.0 hours.[139] The court has also disallowed $547.50 for the time entries on January 9, 18 and 26, 2012 in which counsel billed for events related to conferences with the USDA concerning licensing issues.[140]

Another concern arising from this invoice involves the time billed for preparation of a proposed pretrial order (~4.2 hours up to Jan. 10, 2012 submission deadline, ~ 3.0 hours thereafter). The court advised counsel on several occasions as to what information the proposed pretrial order was to contain, and how it was to be styled—and specifically that the court wanted

---

[138](*See* Feb. 15, 2012 Invoice (CM/ECF No. 71-1) at 62.)

[139](*See* Minute Entry, dated January 12, 2012 (CM/ECF No. 64) ("Time Start: 9:35 AM, Time End: 11:15 AM"); Minute Entry, dated January 27, 2012 (CM/ECF No. 67) ("Time Start: 3:15 PM, Time End: 5:00 PM").) In particular, the January 12, 2012 entry for "All day Court appearance in Utah for hearing on Summary Judgment Motions and pre-trial conference (7.5)," (Feb. 15, 2012 Invoice (CM/ECF No. 71-1) at 57), does not comport with an in-court hearing lasting approximately an hour and forty minutes (~1.66 hours), even allowing an additional thirty minutes for arrival at and departure from the courthouse.

[140](*See* Feb. 15, 2012 Invoice (CM/ECF No. 71-1) at 58, 59, 61.)

only *one* proposed order submitted, as opposed to separate documents prepared by each party.[141]

Nonetheless, the court received competing proposed pretrial orders.[142]   Counsel's time entries

reflect that preparation of the proposed pretrial order began in mid-December,[143] and that there

was some discussion of the plaintiff's draft pretrial order with defendants' counsel in advance of

submission of the competing drafts on January 10, 2012.[144]   Yet it appears that there was no

actual DUCivR 16-1(c) "Attorneys' Conference" as such.   Instead, there were long-distance

discussions between counsel of "Version #2," "Version 3 and 4" of the draft order on January

10th—the submission deadline.[145]

---

[141]This court's Local Rules make this expectation explicit: *see* DUCivR 16-1(c) ("at least ten (10) days prior to the final pretrial conference, counsel for the parties will hold an attorneys' conference to discuss settlement, *a proposed pretrial order*, exhibit list and other matters that will aid in an expeditious and productive final pretrial conference"); DUCivR 16-1(d) ("Preparation for this final pretrial conference should proceed pursuant to Fed. R. Civ. P. 16 and should include (i) preparation by plaintiff's counsel of *a recommended pretrial order* that is submitted to other counsel at least five (5) days prior to the final pretrial date"); DUCivR 16-1(e) ("At the time of the pretrial conference, the parties will submit to the court for execution *a proposed pretrial order* previously served on and *approved by all counsel*. . . .   In the event counsel are unable to agree to a proposed pretrial order, each party will state its contentions as to *the portion of the pretrial order* upon which no agreement has been reached.") (emphasis added). On December 16, 2011, counsel purportedly had conferred "with Local Counsel to discuss pretrial Order and timing of filing completed Order with the Court (.4)" and "[r]eview[ed] initial form of same and Court's local rules (.4)." (Jan. 25, 2012 Invoice (CM/ECF No. 71-1) at 55.)

[142](*See* Notice of Filing, filed Jan. 10, 2012 (CM/ECF No. 62); Defendants' Proposed Final Pretrial Order, filed Jan. 10, 2012 (CM/ECF No. 63).)

[143](*See* Jan. 25, 2012 Invoice (CM/ECF No. 71-1) at 56 ("12/29/2011 Further work on pre-trial Order (1.1); . . . Revise proposed pre-trial Order (.5)").)

[144]The court had set the January 10th pretrial order submission deadline and the January 12th Pretrial Conference in its May 4, 2011 Scheduling Order.  (*See* Order Granting Joint Motion for Order Vacating and Replacing Scheduling Order, filed May 4, 2011 (CM/ECF No. 37).)

[145]Indeed, 3.0 of the 4.2 hours billed by counsel for preparation of the proposed pretrial

(continued...)

Counsel billed an additional 2.6 hours for preparation of the proposed pretrial order by the time of the January 27, 2012 hearing, and the plaintiff's revised draft ("Version #5") was submitted to the court on January 27th—as was another competing draft submitted by defendants' counsel.[146]  At the January 27th hearing, the court directed counsel to submit a stipulated proposed final pretrial order not later than February 13, 2012.[147]  In lieu of that, counsel submitted a stipulation for entry of judgment.[148]

Recognizing that defendants' counsel clearly played some role in the failure of counsel to submit *one* proposed pretrial order as directed by the court and as contemplated by the court's Local Rules, plaintiff's counsel nonetheless remains charged with the responsibility to take the lead in accomplishing that task.  Here, plaintiff's counsel did not do so, and as a consequence, the court awards an adjusted fee amount of $1,985.60 for preparation of versions of the draft pretrial order.[149]

In light of the foregoing, the court awards $17,301.62 based upon the February 15, 2012 invoice, reducing the original claimed amount of $21,662.97 by $4,361.35.

---

[145](...continued)
order up to the deadline were spent on January 9th and 10th.  (Feb. 15, 2012 Invoice (CM/ECF No. 71-1) at 58.)

[146](*See* Notice of Filing, filed Jan. 27, 2012 (CM/ECF No. 65); Defendants' Proposed Final Pretrial Order, filed Jan. 27, 2012 (CM/ECF No. 66).)

[147](*See* Minute Entry, dated Jan. 27, 2012 (CM/ECF No. 67).)

[148](Notice of Filing re: Stip. Entry of Jgmt., filed Feb. 13, 2012 (CM/ECF No. 68).)

[149]That is, $2,482.00 (6.8 hours at $265/hour), less 20%.

### February 27, 2012 Invoice (work performed in February 2012)

On February 27, 2012, Mr. Keaton submitted a bill to his client for $11,786.70, $11,716.50 of which were charges for attorney's fees of Mr. Keaton's law firm.[150]

The court disallows $255.50 for time entries of 0.40 hours on February 8, 2012 and 0.30 hours on February 16, 2012, both of which are related to conferences with the USDA.[151]  The court has also reduced the award by $80.30 for further time (1.1 hours) expended on preparation of the proposed pretrial order prior to the February 13, 2012 submission deadline.[152]

In light of the foregoing, the court awards $11,450.90 based upon the February 27, 2012 invoice, reducing the original claimed amount of $11,786.70 by $335.80.

### April 23, 2012 Invoice (work performed in March and April 2012)

On April 23, 2012, Mr. Keaton submitted a bill to his client for $9,842.11, $6,862.50 of which were charges for attorney's fees of Mr. Keaton's law firm, and $980.38 of which represented charges for Mr. Anderson's March attorney's fees.[153]  By Supplemental Affidavit, Mr. Keaton seeks an additional award of $4,380.00 for time spent attending the April 12, 2012 hearing on plaintiff's fee request.[154]

As explained above, the court will not award Keaton fees claimed on behalf of Mr.

---

[150](*See* Feb. 27, 2012 Invoice (CM/ECF No. 71-1) at 67.)

[151](*Id.* at 63, 65.)

[152](*Id.* at 63-64; *see id.* at 64 ("2/9/2012 . . .  Continue preparing pre-trial Order to avoid upsetting Judge any further").)

[153](*See* Apr. 23, 2012 Invoice (CM/ECF No. 76-1), *annexed to* Keaton Supplemental Aff., at 6-7.)

[154](Minute Entry, dated April 12, 2012 (CM/ECF No. 75).)

Anderson.  The lion's share of the time billed in March and April of 2012 concerned the preparation of the attorney's fee application.  Thus, counsel seeks an award of nearly $7,000 in attorney's fees for time spent asking for an award of attorney's fees—time which counsel avers was "reasonably incurred for the tasks performed and necessary based on the actions of the Defendants,"[155] including preparing a reply to the defendants' response objecting to plaintiff's fee request.[156]  Counsel requests an additional "estimated" fee of $4,380 for counsel's attendance at the April 12, 2012 hearing, though that amount (and any supporting detail) is not reflected on any time sheet or invoice submitted to the court.[157]

The court is not inclined to award attorney's fees for an "estimated" *16.0* hours of attorney time spent attending a *1.6* hour hearing on plaintiff's attorney's fees request, even at the partially reduced hourly rate proposed by counsel—particularly given the fact that Mr. Keaton spent much of his time at the April 12th hearing *testifying as a witness*.[158]

In light of the foregoing, the court awards $8,861.73 based upon the April 23, 2011 invoice, and an additional $365.00 for counsel's attendance at the April 12, 2012 hearing on fees, reducing the original claimed amount for March and April 2012 of $14,222.11 by $5,360.38.

---

[155](Keaton Supplemental Aff. at 2-3 ¶ 6.)

[156]*Cf. Iqbal v. Golf Course Superintendents Ass'n of America*, 900 F.2d 227, 229 (10th Cir.  1990) (observing that "'courts commonly allow additional attorney's fees for time spent in establishing an original fee entitlement'" under 42 U.S.C. § 1988 (quoting *Glass v. Pfeffer*, 849 F.2d 1261, 1266 n.3 (10th Cir. 1988)));  *Mares*, 801 F.2d at 1206 ("[T]he general rule is that at least some compensation is generally allowable for work reasonably expended on the fee application . . . ."); *Littlefield v. Deland*, 641 F.2d 729, 733 (10th Cir. 1981) (suggesting that a party may receive attorney's fees for work done "in resolving the fee issue itself").

[157](*See* Keaton Supplemental Aff. at 2-3 ¶¶ 5, 8.)

[158](Tr. 4/12/12, at 4:23-32:12 (testimony of Mr. Keaton).)

*Summary*

Pursuant to the foregoing findings and analysis, the total attorney's fees and costs awarded to plaintiff based upon the materials submitted by Keaton & Associates, P.C., is **$83,406.38**.

**Mr. Anderson's Attorney's Fees**

Mr. Anderson avers that attorney's fees in the amount of $9,316.25 were "necessarily and reasonably incurred" by plaintiff through Mr. Anderson's performance of legal work as local counsel in pursuing plaintiff's contractual claim against the defendants in this case, together with $374.19 in costs.[159]  Having reviewed Mr. Anderson's fee and cost itemizations in some detail, the court is satisfied that Mr. Anderson is essentially correct.  Therefore, the court awards **$9,690.44** based upon Mr. Anderson's attorney's fees and costs submission.

**Proportionality of Plaintiff's Attorney's Fee Request**

Defendants complain that the plaintiff's attorney's fee request is "outrageously excessive" and argue that plaintiff "is certainly not entitled to the exorbitant $92,199.77 in attorneys fees and costs that it requests for a simple collection action where the total amount of principle [sic] and interest claimed" is only $38,328.38.[160]

While not prepared to characterize plaintiff's attorney's fee request as "outrageously excessive," the court did express some concern at the April 12th hearing about the disparity between the amount of plaintiff's recovery under the parties' stipulated judgment and the

---

[159](Anderson Aff. at 4-5 ¶¶ 11-12.)

[160](Defs.' Opp'n at 13, 14.)

significantly larger amount now sought under plaintiff's attorney's fee request.[161]

At least in the context of statutory attorney's fees awards, "the amount of damages recovered by the plaintiff is relevant" to the reasonableness of a fee award, and "[i]n addition, a court may consider the amount in controversy and the amount of damages sought."[162]  But "case law listing factors for consideration in attorneys' fees disputes reminds us that no one of these factors is conclusive, and a court should consider them all. . . .  The amount recovered is only one factor to be considered in fashioning an appropriate fee award."[163]  The Colorado courts appear to have concluded that attorney's fee awards should not necessarily "have a direct or proportional relationship to the amount of damages awarded,"[164] at least as to statutory attorney's fees, following the lead of cases such as *City of Riverside v. Rivera*, 477 U.S. 561 (1986) (plurality opinion) (noting that "reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages"),[165] and *Ramos v. Lamm*, 713 F.2d 546, 557

---

[161](Tr. 4/12/12, at 13:19-17:3.)

[162]*Tallitsch v. Child Support Services, Inc.*, 926 P.2d at 148 (citing *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274 (Colo. Ct. App. 1993), and Colo. R. Prof. Cond. 1.5(a)(4) (factors regarding reasonableness include amount involved and results obtained)).

[163]*Mau v. E.P.H. Corp.*, 638 P.2d at 780 (citing *Hartman* and other cases).

[164]*Tallitsch*, 926 P.2d at 148.

[165]As Justice Brennan elaborated in *City of Riverside*, 477 U.S. at 575-76:

Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief.  Rather, Congress made clear that it "intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and *not be reduced because the*

(continued...)

-37-

(10th Cir. 1983) (court should consider amount of monetary recovery as a "factor in determining what amount of time was reasonably expended in the litigation," but this "should not be expressed as a requirement that the fee award have a particular relationship to the amount of the monetary recovery").  For example, in *Hartman v. Community Responsibility Center, Inc.*,[166] the Colorado Court of Appeals affirmed an award of nearly $160,000 in attorney's fees on plaintiff's $24,000 Colorado Wage Claim Act claim where the plaintiff had wholly prevailed upon her claim and all of the defendant's counterclaims, as well as "'the multitude of pretrial motions in this case,'" rejecting defendant's assertion that the fees were unreasonable because they were disproportionate to the amount recovered:

> We also disagree with CRC's contention that the $159,888.08 fee award is unreasonable simply because it is disproportionate to a wage claim worth only about $16,000.  In *Hartman v. Freedman*, . . . the supreme court expressly rejected the contention that "the award of attorney's fees is limited by the amount of the judgment on the merits."[167]

---

[165](...continued)
*rights involved may be nonpecuniary in nature*." Senate Report, at 6, U.S. Code Cong. & Admin. News 1976, p. 5913 (emphasis added). "[C]ounsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, '*for all time reasonably expended on a matter.*'" Ibid. (quoting *Van Davis v. County of Los Angeles*, 8 EPD ¶ 9444 (CD Cal. 1974) (emphasis added)). . . . Thus, Congress recognized that reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages.

*See also id.* at 485 (Powell, J. concurring in judgment) ("Petitioners argue for a rule of proportionality between the fee awarded and the damages recovered in a civil rights case. Neither the decisions of this Court nor the legislative history of 1988 support such a 'rule.' The facts and circumstances of litigation are infinitely variable.")

[166]87 P.3d 254 (Colo. Ct. App. 2004).

[167]*Id.* at 258 (citation omitted) (quoting *Hartman v. Freedman*, 197 Colo. at 281, 591 P.2d
(continued...)

Differing policy considerations may arise in the context of an attorney's fee award pursuant to a private contract for the sale of goods, where "'the public as a whole'" may not have as much of "'an interest in the vindication of the rights conferred . . . over and above the value'" of a contractual damages remedy "'to a particular plaintiff.'"[168]

Colorado courts have expressed some concern about proportionality of contractual attorney's fee awards to the damages actually recovered by the plaintiff.  The Colorado Court of Appeals recently held that under a contractual attorney's fee provision, where "the judgment based on the note or contract has been reduced by a counterclaim arising out of the transaction, an apportionment of attorney fees is required in proportion to the amount recovered on the note less the amount recovered on the counterclaim."[169]

But that is not the situation here.  The defendants stipulated to the entry of judgment against themselves in the amount of $26,416.14, plus accrued interest since December 2, 2009— corresponding exactly with the principal amount alleged to be due to plaintiff by the Amended

---

[167](...continued)
at 1321).

[168]*City of Riverside*, 477 U.S. at 574 (plurality opinion) (quoting *Hensley*, 461 U.S., at 444, n. 4 (Brennan, J., concurring in part and dissenting in part)); *cf. id.* at 585 (Powell, J., concurring in judgment) ("Under *Hensley*, of course, 'the most critical factor [in the final determination of fee awards] is the degree of success obtained.' . . .Where recovery of private damages is is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compares to the amount sought."(citation omitted)).

[169]*Planning Partners Intern., LLC v. QED, Inc.*,--- P.3d ----, 2011 WL 5084925, at *5 (Colo. Ct. App. 2011), *cert. granted*,  2012 WL 3642438 (Colo. Aug 27, 2012) (citing *Borchardt v. Wilk*, 156 Wis.2d 420, 456 N.W.2d 653, 656 (Wis. Ct. App.1990), and *Elder v. Triax Co.*, 740 P.2d 1320, 1321 (Utah 1987), among other cases).

Complaint,[170] with *no* reduction taking into account any amount claimed pursuant to defendant

Liqua-Dry's pleaded Counterclaim—a pleading that ostensibly sought to recover "not less than

$72,000" from the plaintiff.[171]

Courts have affirmed attorney's fee awards that exceed the settlement or judgment

amount.[172]  Even so, in representing the client, the attorney "must be held to a standard of

reasonable competency in preparing and trying the case and must give consideration to the

*economic aspects involved in the controversy*."[173]  In particular circumstances, courts have

significantly reduced a fee award in relation to the total fees requested where "'the time expended

was greatly disproportionate to that required'" to obtain the result, but have nevertheless awarded

---

[170](*See* Amended Complaint, filed Feb. 9, 2011 (CM/ECF No. 29), at Exh. "A".)  As pleaded, the Amended Complaint sought recovery of $33,523.20, which included the $26,416.14 invoiced amount due, plus accrued interest of $2,269.25 (as of June 11, 2010), and $4,837.81 in "collection costs" (also as of June 11, 2010).  (*Id.*)

[171](Amended Ans. & Cntrclm. of Def. Liqua-Dry, Inc. to the Amend. Comp., filed Feb. 23, 2011 (CM/ECF No. 34), at 14 ¶¶ 33.)

[172]*See, e.g.*, *Valcarce v. Fitzgerald*, 961 P.2d 305, 317 (Utah 1998) (Zimmerman, J.) ("In the present case, the damages claimed total less than $10,000.  Attorney fees of $42,000 are clearly much higher than they might have been.  That alone, however, does not make them unreasonable."); *Boel v. Stewart Title Guar. Co.*, 137 Idaho 9, 43 P.3d 768 (2002) (affirming award of $89,455.90 in attorney's fees incurred in obtaining $70,000 in damages); *Electrical Wholesale Supply Co., Inc. v. Nielson*, 136 Idaho 814, 41 P.3d 242 (2001) (affirming award of $26,930.65 in costs and attorney's fees to a prevailing lien claimant who was awarded $11,691.08 on its lien claim); 1 Robert L. Rossi, *Attorneys' Fees* § 5:7 (3d ed. rev. 2012) ("It has frequently been held that the amount of attorney compensation need not be proportional to the amount of damages awarded and that the damage award does not necessarily set a ceiling on the fee." (footnotes omitted)).

[173]*Spensieri v. Farmers Alliance Mut. Ins. Co.*, 804 P.2d at 271 (emphasis added).

-40-

fees in excess of the final settlement amount.[174]

In this case, the court declines to discount "a substantial portion of counsel's hours as excessive"[175] simply because the total fees sought by the plaintiff significantly exceed the $26,416.14 principal settlement amount. "[A]lthough the amount in controversy can be a factor in determining a reasonable fee, care should be used in putting much reliance on this factor."[176] The total amount of attorney fees awarded in a case cannot be said to be unreasonable just because it is greater than the amount recovered in damages.[177]

For their part, the defendants did not focus solely on resolving the plaintiff's $26,416.14 principal claim—which two years later, they have now wholly conceded. Instead, they responded to plaintiff's pursuit of this claim with an unsuccessful motion to dismiss; two seven-count counterclaims that two years later have come to naught; an unsuccessful motion for partial summary judgment on the question of attorney's fees; two motions to strike; two competing proposed pretrial orders; multiple "settlement letters"; and a memorandum in opposition to plaintiff's attorney's fee request, all of which called upon plaintiff's counsel to formulate a response. Had the defendants conceded liability for the plaintiff's $26,416.14 principal claim when they were initially served with the complaint on June 25, 2010—as they ultimately did on

---

[174]*See, e.g.*, *Bratcher  v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d at 725 (affirming $221,756.25 attorney's fee award on a $150,000 settlement, representing "approximately one-half . . . of the amount[] requested") (quoting *Mares*, 801 F.2d at 1205).

[175]*Bratcher*, 8 F.3d at 725.

[176]*Dixie State Bank*, 764 P.2d at 990.

[177]*See Cabrera v. Cottrell*, 694 P.2d 622, 625 (Utah 1985) (stating that "[t]he amount of the damages awarded in a case does not place a necessary limit on the amount of attorneys fees that can be awarded.")

February 13, 2012—their contractual attorney's-fee-and-collection-costs exposure at that point would have been approximately $5,600.00.  The nearly two years of wrangling that it actually took counsel to get to this point served only to multiply the fee-and-cost expense for the plaintiff in pursuing its meritorious claim—a burden now to be shifted to the defendants themselves, jointly and severally.

## CONCLUSION

Based upon the findings made herein, and for the reasons explained in some detail above, this court concludes that plaintiff Grant Family Farms is entitled to recover attorney's fees and collection costs from the Defendants Liqua-Dry, Deeanna Peterson and Elend Lebaron, jointly and severally, in the total sum of **$93,096.82**,[178] pursuant to the terms of the parties' contract providing that "[i]n the event collection action becomes necessary, buyer agrees to pay all costs of collection, including attorney fees."  Therefore,

**IT IS ORDERED** that Plaintiff's Motion to Determine Reasonableness of its Attorney's Fees and Costs and to Add Same to the Partial Judgment, filed February 27, 2012 (CM/ECF No. 70) is hereby GRANTED; plaintiff Grant Family Farms is awarded the sum of **Ninety-Three Thousand, Ninety-Six and 82/100 Dollars ($93,096.82)** as its reasonable attorney's fees and costs of collection incurred during the prosecution of the above-captioned proceeding, and the same is to be added to the amount of plaintiff's stipulated interlocutory Judgment[179] against the defendants Liqua-Dry, Deeanna Peterson and Elend Lebaron, jointly and severally.

---

[178]This award represents approximately 87.2% of the total amount of attorney's fees and collection costs requested by plaintiff.

[179](*See* Stip. Ord. & Jgmt (CM/ECF No. 69).)

-42-

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED this **27**th day of September, 2012.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge